485 A.2d 830

**Matthew HAHN and Spotts and Morrow,**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY and Boston Old Colony Insurance Company.**

**Appeal of LIBERTY MUTUAL INSURANCE COMPANY.**

**Cross Appeal of BOSTON OLD COLONY INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued July 31, 1984.

Filed Dec. 14, 1984.

Petition for Allowance of Appeal Denied June 7, 1985.

330

Mary A. Czajkowski, Pittsburgh, for appellant (at No. 903) and for appellee (at No. 916).

Thomas M. Fallert, Pittsburgh, for appellant (at No. 916) and for appellee (at No. 903).

Charles S. Morrow, Pittsburgh, for appellees.

Before ROWLEY, DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

Matthew Hahn, a resident of the State of New York, sustained injuries in an automobile accident in Clearfield County, Pennsylvania on May 25, 1979. The accident in question occurred while Hahn was operating a rental car

obtained in New York. The rental car was insured by Liberty Mutual Insurance Company (Liberty Mutual) under a policy issued to the rental car agency. At the time of the accident, Matthew Hahn did not own a motor vehicle and resided with his parents in New York. Hahn's mother, Margurite Hahn, did own an automobile at the time of the accident which was insured by Boston Old Colony Insurance Company (Boston Old Colony).

Matthew Hahn filed a claim for no-fault basic loss benefits with Liberty Mutual and Boston Old Colony. Both claims were denied. Thereafter, Matthew Hahn instituted the instant action in assumpsit to recover no-fault benefits under the provisions of the Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101 et seq. Specifically, Hahn sought the payment of unlimited medical benefits as provided under the Act. Liberty Mutual and Boston Old Colony filed preliminary objections to the complaint which were sustained with direction to amend. Following the filing of the amended complaint, the insurers again filed preliminary objections, and by order of court Hahn's complaint for no-fault benefits under the Pennsylvania Act was dismissed without prejudice for him to claim no-fault benefits under the New York No-Fault Act, N.Y.Consol.Stat., Title 27, Insurance Law, §§ 670–678. Subsequently, the insurers filed an answer and new matter.

At the close of the pleadings, Hahn filed a motion for summary judgment to determine as a matter of law which insurer was responsible as the primary obligor for payment of no-fault benefits and in what amount. Boston Old Colony filed its own motion for judgment on the pleadings alleging that Liberty Mutual was the responsible insurer for no-fault benefits. At issue was whether Hahn was entitled to unlimited medical benefits as is provided under the Pennsylvania Act or whether he was limited to a maximum of $50,000.00 in medical benefits as provided under the New York Act. Following the submission of briefs and oral argument, the trial court *en banc* granted both motions holding that Liberty Mutual was the primary obligor to

Hahn for no-fault benefits. The trial court also held that while New York law applied in the instant case, Hahn was entitled by the New York Act to receive unlimited medical benefits. Following the entry of judgment, Liberty Mutual filed a timely appeal, and after which Boston Old Colony filed a timely cross-appeal.

Liberty Mutual raises the following issues for our review: 1) Whether the trial court erred in granting Hahn's motion for summary judgment because the case was not ripe for summary judgment; 2) Whether the trial court erred in finding that Liberty Mutual was the primary obligor for no-fault benefits; and 3) Whether the trial court erred in finding that coverage under the Liberty Mutual policy extended to Matthew Hahn. Both Liberty Mutual and Boston Old Colony raise the following final issue for our review: Whether the trial court erred in holding that the New York No-Fault Act permitted Hahn to recover unlimited basic loss medical benefits instead of being limited to the $50,-000.00 maximum under the New York Act? For the following reasons, we affirm.

■ Liberty Mutual first contends that the instant case is not ripe for summary judgment because: 1) the record does not establish that Matthew Hahn has incurred more than $50,000.00 in medical expenses and, 2) that the instant case raises conflict of law questions between Pennsylvania and New York that must be first resolved by the trial court. This argument is meritless.

Liberty Mutual somehow contends that Matthew Hahn can only litigate the issue of his entitlement to unlimited medical benefits if he has first exceeded the $50,000.00 ceiling for such benefits under the New York law. However, the issues in the instant case are strictly ones of law. The issues are: who owes coverage and in what amount? There is no contention that Matthew Hahn is not entitled to the payment of no-fault medical benefits. It would not matter in our decision as to what dollar amount Hahn has incurred in medical expenses because he is or is not entitled to receive unlimited benefits as a matter of law. We can

find no reason why he would have to incur some dollar figure of medical expenses before we could resolve this question.

Second, contrary to the assertions of Liberty Mutual there is no conflict of laws question in the instant case because the Pennsylvania No-Fault Act clearly and unambiguously provides that basic loss benefits available to a victim shall be determined in accordance with the provisions of the No-Fault Act in effect in the victim's state of domicile at the time of the accident. 40 P.S. § 1009.-110(c)(1). Since the issues presented are those dealing with Hahn's entitlement to basic loss medical benefits, our legislature requires that we look to the law of the State of New York to determine the issues at hand. Thus, the instant case was ripe for summary judgment and is properly before this court on appeal.

Liberty Mutual next contends that the trial court erred in finding that it, and not Boston Old Colony, was the primary obligor for the payment of basic loss benefits to Matthew Hahn and also finding that the language of the Liberty Mutual policy encompassed coverage for Hahn even though he was not expressly named as an insured under the policy. First, the record is clear that Liberty Mutual was the insurer of the rental car driven by Hahn at the time of the accident and that Boston Old Colony insured the car of Hahn's mother. The trial court held that New York law places primary responsibility for the payment of first party no-fault benefits on the insurer of the *vehicle* not the individual, unlike Pennsylvania law. Accordingly, the trial court held that Liberty Mutual was the primary obligor since it insured the vehicle Hahn was driving at the time of the accident. An examination of New York law shows the trial court to be correct.

In *Ohio Casualty Ins. Co. v. Continental Ins. Co.*, 101 Misc.2d 452, 421 N.Y.S.2d 317 (1979), a New York court concluded that insurance under the New York No-Fault Act is designed to follow the vehicle rather than the injured party for the purpose of determining the insurer respon-

sible for no-fault benefits. In *Ohio Casualty* the victim was a Pennsylvania resident injured while a passenger on a bus involved in an accident in New York. The bus was owned by a Maryland corporation and insured under a no-fault policy issued in Maryland. The victim did own a automobile which was insured by a policy issued in Pennsylvania. After examining New York law the *Ohio Casualty* court concluded that the insurer of the bus was the primary obligor for the payment of first party no-fault benefits to the victim.

A similar situation exists in the instant case. Matthew Hahn was injured while driving in a rental vehicle insured by Liberty Mutual. While Hahn did not own a motor vehicle at the time of the accident he was covered as a relative under his mother's policy of no-fault insurance issued on her personal vehicle. Since coverage follows the *vehicle* and not the insured, Hahn then must first look to the insurer of the vehicle, Liberty Mutual, and not his mother's insurer, Boston Old Colony. Accordingly, this argument of Liberty Mutual is dismissed.

Liberty Mutual also contends that Hahn is covered under the Boston Old Colony policy because the language of its policy issued to the rental car agency excludes Hahn from the definition of a person eligible to collect benefits under the policy. Liberty Mutual contends that under its policy only an "eligible injured" is entitled to coverage. That term is defined in the policy as the named insured or relative who sustains injury arising out of the use of a motor vehicle *or* any other person who sustains an injury arising out of the use or operation of the insured's motor vehicle within the State of New York while not occupying another motor vehicle. Liberty Mutual argues that since Hahn is not the named insured or a relative then Hahn must qualify as "any other person". However, Liberty Mutual contends that Hahn would only qualify as "any other person" if he were operating the rental vehicle in New York at the time of the accident. Since the policy excludes operation of the vehicle outside New York to qualify for coverage Liberty Mutual

concludes that Hahn is not an insured under its policy and thus must look to his mother's insurer, Boston Old Colony, for basic loss benefits. The trial court rejected this argument. After a review of New York law we find that the trial court was correct.

An examination of New York law reveals that the New York courts have rejected the kind of restrictive interpretation of insurance policies that Liberty Mutual asks this court to adopt. In *Fidelity and Casualty Co. of New York v. Russell*, 31 App.Div.2d 4, 294 N.Y.S.2d 377, *aff'd* 26 N.Y.2d 678, 308 N.Y.S.2d 399, 256 N.E.2d 550 (1968), a corporation leased taxicabs to a taxicab operator. The taxicabs were insured under a policy issued to the lessor corporation. Subsequently, employees of the lessee operator became involved in accidents and the insurer of the taxicabs refused to defend damage claims because the lessee operator and its employees were not named insured under the policy. The *Russell* court rejected this narrow interpretation of the insurance policy. The court found that despite the fact that the lessee and its employees were not named insureds under the policy, the policy was intended to insure against the operational risks inherent in taxicabs, including motor vehicle accidents of the drivers. Accordingly, the court held that the policy must reasonably be read to extend to the lessee and its employees. The *Russell* court stated as follows:

> We do not find an insurance contract to be so sacrosanct that its literal language must be followed to the extent of excluding the very risk it factually intended to insure. It appears that the proper remedy of the company would be in regard to seeking its appropriate additional premium, if any, rather than the avoidance of risk.

294 N.Y.S.2d at 381.

■ We find the analysis of the *Russell* case to be applicable to the instant facts. Liberty Mutual by insuring the rental vehicle can only have intended to insure not only the owner lessor but the lessees of the vehicles as well. This is apparent from Liberty Mutual's admission that Matthew

Hahn would have been covered under the policy if the accident occurred in New York. However, when Matthew Hahn rented the vehicle in question he was never told that coverage from the policy on the vehicle would extend only as far as the New York border nor was he prohibited under the rental agreement from driving the vehicle out of New York. The rental car company and Liberty Mutual can reasonably have anticipated that some rental vehicles would be operated outside the State of New York and thus the policy was written to exclude a risk that the policy intended to insure against, namely the operation of rental vehicles by lessees. As the *Russell* court held we find that it would be more appropriate in this case for Liberty Mutual to charge an additional premium to cover out-of-state usage of the rental vehicles rather than exclude such coverage. In the instant case Matthew Hahn was a person that the policy intended to insure and Liberty Mutual cannot evade coverage based on a literal reading of its policy.

■ The final issue for our review raised by both insurers involves an interpretation of Section 672(5) of the New York Comprehensive Automobile Insurance Reparations Act, or the New York No-Fault Act, N.Y.Consol.Stat., Title 27, § 672(5). While this issue has never been addressed by an appellate court of this Commonwealth the issue has been addressed in the New York state courts and the Pennsylvania federal courts and it is to those cases which we look for guidance.

In the instant case Matthew Hahn, a New York resident, was injured in an accident in Pennsylvania. In this situation Pennsylvania law clearly provides, as previously noted, that New York law would apply to determine the amount of benefits the victim would receive under no-fault. However, when we look to the New York No-Fault Act it provides that every New York motor vehicle owner's policy of insurance is deemed to provide that when the vehicle is operated in another state the insurance coverage for said vehicle shall be at least in the minimum amount of coverage required for such vehicle by the laws of that state. N.Y.

Consol.Stat., Title 27, § 672(5). This is significant since the New York act limits basic loss medical benefits available to a victim to $50,000.00. Hahn contends here, as he did below, that Section 672(5) of the New York act must be read as providing the minimum coverage of no-fault as required by Pennsylvania, one item of which is unlimited medical benefits. Liberty Mutual and Boston Old Colony take the position that Section 672(5) applies only to liability insurance and not no-fault insurance. Our review of the cases which have interpreted Section 672(5) lead us to conclude, as did the lower court, that Hahn's interpretation of the Act is the correct one.

In *Country-Wide Ins. Co. v. Rodriguez,* 80 App.Div.2d 130, 437 N.Y.S.2d 674, *aff'd.* 55 N.Y.2d 162, 448 N.Y.S.2d 135, 433 N.E.2d 118 (1982) the New York courts were faced with interpreting Section 672(5). In *Rodriguez* a New York resident was injured while a passenger in a New York owned and insured car involved in a two-car accident in North Carolina. The passenger brought suit against both the New York and North Carolina drivers involved in the accident, which resulted in a verdict of $100,000.00 with the New York driver found 60% negligent and the North Carolina driver found 40% negligent. On the basis of the above judgment the passenger demanded $15,000.00 from the insurer of the New York vehicle. The insurer refused to pay the full $15,000.00 arguing that it was only liable for the policy limits on the New York car or $10,000.00. The passenger contended that she was entitled to the $15,000.00 under Section 672(5) since the minimum amount of liability coverage in North Carolina was $15,000.00. The *Rodriguez* court agreed with the passenger's interpretation.

The *Rodriguez* court held that Section 672(5) clearly mandates the North Carolina minimum of liability coverage of $15,000.00 applied under the New York policy. The court found that when a New York insured vehicle is operated in another state the policy of New York insurance is deemed to meet the minimum liability requirements of the other state. The insurer had attempted to argue that Section

672(5) was intended to apply only to non-New York residents injured by New York residents outside the State of New York. This argument was rejected and the passenger was permitted to recover the $15,000.00.

Liberty Mutual and Boston Old Colony concede that *Rodriguez* is a proper interpretation of Section 672(5). However, the insurers believe that Section 672(5) should be limited to liability insurance. Conversely, Hahn argues that Section 672(5) should be extended to apply to basic loss no-fault benefits as well and cites *Wierbinski v. State Farm Mut. Auto. Ins. Co.*, 477 F.Supp. 659 (W.D.Pa.1979) in support. A review of that decision leads us to believe that *Wierbinski* is also a proper interpretation of Section 672(5).

In *Wierbinski* a New York domiciliary owned an automobile insured under a policy of no-fault insurance issued in New York. The New York domiciliary was subsequently injured in a one-car accident in Pennsylvania. After examining the New York No-Fault Act the *Wierbinski* court concluded that the only logical interpretation of Section 672(5) was that it raises the limits of liability and the kinds of coverage afforded by a New York owner's policy to meet any higher requirements of a no-fault state in which an accident occurs. Thus, the New York domiciliary was entitled to unlimited medical benefits provided by the Pennsylvania No-Fault Act. The court clearly stated that its decision was based on New York law and the applicable insurance policy and not solely because the accident occurred in Pennsylvania. We find the rationale of *Wierbinski* to be persuasive and thus adopt it as precedent in this Commonwealth.

The argument of Liberty Mutual and Boston Old Colony that Section 672(5) applies only to liability insurance not no-fault coverage is meritless in light of an overall reading of the New York No-Fault Act. The very title of the New York act, "The Comprehensive Automobile Insurance Reparations Act" clearly reveals the intent of the New York legislature to enact a scheme of both liability and no-fault

insurance. This becomes apparent when one reviews the text of the Act. Section 672(5) is an integral part of the Act and there is nothing explicit in the Act which would indicate that it applies only to liability coverage and not to basic loss benefit coverage.

The insurer-Appellants also cite this Court's decision in *Toter v. Knight*, 278 Pa.Super. 547, 420 A.2d 676 (1980) in support of its argument that the New York maximum of $50,000.00 in medical benefits applies and not the unlimited benefits of the Pennsylvania Act. However, a close reading of *Toter* reveals that it is consistent with the holding in the instant case.

In *Toter* the issue was whether New Jersey or Pennsylvania law applies with regard to the right to sue in tort for an injury covered under no-fault. In that case a New Jersey resident was injured in an accident in Pennsylvania. At the time of the accident the tort threshold in New Jersey was $200.00 while the Pennsylvania threshold was $750.00. The New Jersey resident contended that the law of his domicile should apply with regard to the threshold amount. This Court agreed in light of the specific provision in the Pennsylvania act stating that the right to sue in tort for an injury under the No-Fault Act is governed by the law of the victim's domicile, that being New Jersey. The *Toter* court also found that New Jersey law would govern the amount of basic loss benefits owed. We agree. However, our holding in the instant case goes one step beyond *Toter* in that we have found that when the state law of the victim's domicile, New York, provides that benefits are deemed to be at least in the minimum as the state in which the accident occurred, Pennsylvania, then we are bound by the other state's law to award no-fault benefits available under the Pennsylvania act. Thus, we are not applying Pennsylvania law but rather the law of New York.

Accordingly, for all the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.