537 A.2d 849

**Conchetta Lydia LAZARO, Appellant,**

v.

**AETNA CASUALTY AND SURETY COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued April 29, 1987.

Filed Jan. 22, 1988.

JoAnna H. Flum, Philadelphia, for appellant.

Keith Grumbine, Pittsburgh, for appellee.

Before OLSZEWSKI, DEL SOLE and BECK, JJ.

DEL SOLE, Judge:

This is an appeal from a judgement which denied Appellant's claim for work-loss benefits and attorney's fees under the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act).[1] The significant issue is whether Appellant's entitlement to work-loss benefits will be determined pursuant to the Pennsylvania No-fault Act, or the No-fault Act of the State of New York. For the reasons which follow, we reverse.

Appellant was injured in a motor vehicle accident which occurred in Pennsylvania. At the time of her accident, Appellant was a resident of the state of New York. The unfortunate circumstances are stated in the following short order.

Appellant had been standing beside her automobile which was parked on the berm completely off the main travelled portion of U.S. Route 209 when she was struck by the dislodged tire and rim of a passing tractor trailer. The force of the impact threw her approximately 25 feet into the air, rendered her unconscious and caused her to suffer serious and permanent injuries. She has been unable to work since the accident.

At the time of the occurrence, Appellant was a named insured under a no-fault policy of insurance issued by Appellee, Aetna Casualty & Surety Co., in the State of New York. Appellee provided medical and hospital benefits, but denied Appellant's application for work-loss benefits since one month prior to sustaining her injuries, Appellant lost her job as a waitress when the restaurant where she worked ceased doing business. The case proceeded to arbitration in the Court of Common Pleas of Philadelphia County and the arbitrators found in favor of Appellant. A timely appeal of this award was made by Appellee and the case proceeded to trial on a case stated basis. The trial

---

1. Act of July 19, 1974, P.L. 489, No. 176, Sec. 101, *et seq.*, 40 P.S. § 1009.101 *et seq., repealed,* Act of February 12, 1984, P.L. 26, No. 11, Sec. 8(a), *effective* October 1, 1984. At the time of the motor vehicle accident in question, the now repealed No-fault Act was still in effect.

court entered a judgment in favor of Appellee and this appeal followed.

Initially, we note that this appeal presents no conflict of laws question. *See Hahn v. Liberty Mutual Ins. Co.*, 336 Pa.Super. 329, 485 A.2d 830 (1984). Our legislature has expressly incorporated a conflict of laws provision into the Pennsylvania No-fault Act which reads:

(c) Applicable law.—

(1) The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect *in the state of domicile of the victim* on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

40 P.S. § 1009.110(c)(1) (emphasis added by the majority).

Turning to the relevant New York No-fault statute, N.Y. Consol.Stat., Book 27, Insurance Law, § 672(5) provides:

[E]very owner's policy of liability insurance issued in satisfaction of articles six or eight of the vehicle and traffic law shall also provide, where a motor vehicle covered by such policy is used or operated in any state or in any Canadian province, insurance coverage for such motor vehicle at least in the minimum amount required for such vehicle by the laws of such other state or Canadian province.

Furthermore, Section 60.1(e) of the New York Insurance Department Regulations provides:

[A] provision that when a motor vehicle is used or operated in any other state or Canadian province as policy currently in effect or hereafter issued shall provide *at least the minimum amount and kind of coverage* which is required in such cases under the laws of such other

jurisdiction. Any policy not containing such provision shall nevertheless be deemed to provide such coverage or benefits to the extent that a New York insured carries additional coverage under an automobile or motor vehicle policy of a resident of the jurisdiction on wherein an injury occurs.

11 NYCRR 60.1(e) (emphasis added by the majority).

Finally, we note the Out-of-State Insurance Endorsement provision of Appellant's policy which reads:

[I]t is agreed that, subject to all the provisions of the policy except where modified herein, the following provision is added:

If under the provisions of the motor vehicle financial responsibility law or the motor vehicle compulsory insurance law or any similar law of any state or province, a non-resident is required to maintain insurance with respect to the operation or use of a motor vehicle in such state or province and such insurance requirements are greater than the insurance provided by the policy, *the limits of the company's liability and the kinds of coverage afforded by the policy shall be set forth in such law,* in lieu of the insurance otherwise provided by the policy, but only to the extent required by such law and only with respect to the operation or use of a motor vehicle in such state or province; provided that the insurance under this provision shall be reduced to the extent that there is other valid and collectible insurance under this or any other motor vehicle insurance policy. In no event shall any person be entitled to receive duplicate payments for the same elements of loss. (Emphasis added).

From the foregoing, our review is focused on whether Appellant is entitled to work-loss benefits under the Pennsylvania No-fault Act. Pennsylvania law will permit a recovery for such a claim since it need only be supported by the showing of a loss of earning capacity. *See Freeze v. Donegal Mutual Insurance Co.,* 504 Pa. 218, 470 A.2d 958 (1983). On the other hand, if the substantive law of New York is applicable to this action, Appellant is not entitled to

work loss benefits as she did not suffer any actual wage loss. *See Nationwide Mutual Insurance Co. v. Ward,* 113 Misc.2d 867, 450 N.Y.S.2d 147 (1982).

■ The applicable law of the Commonwealth leads us to consider the case law of New York for an informed interpretation of 27 N.Y. Insurance Law § 672(5). The resulting question becomes how broad or narrow will our interpretation be of the "kinds of coverage" provision in Appellant's policy.

Appellee maintains the case of *Allstate Insurance Co. v. Walsh,* 115 Misc.2d 907, 454 N.Y.S.2d 774 (1982), aff'd 99 A.D.2d 987, 472 N.Y.S.2d 867 (First Department) is controlling in this matter. Specifically, Appellee claims the reasoning of *Allstate* is more consistent with the clear statutory language of New York's no-fault laws. In *Allstate,* the New York Court ruled that Section 672(5) and the Insurance Regulations promulgated pursuant to that statute "do not create substantive additional coverage for accidents which occur in a sister state." *Id.,* 115 Misc.2d at 913, 454 N.Y.S.2d at 778.

However, we note the opposite position taken on this matter by the same New York court, but a different division, which held that New York residents, under these same facts, are to be provided with both the minimum amount and kind of coverage required by the state in which the vehicle is travelling at the time of the accident. *Allcity Ins. Co. v. Williams,* 120 A.D.2d 1, 506 N.Y.S.2d 974 (Second Department 1986).

Appellant maintains she is entitled to both the minimum amount and kinds of coverage provided by Pennsylvania law. Specifically, Appellant relies on the language of Section 60.1(e) of the New York Insurance Department Regulations and the "Out-of-State Endorsement" clause contained in her insurance policy to bolster her contention that she is entitled to recover work-loss benefits.

Preliminarily, we are well served to consider the following language of the *Allcity* court with respect to the authority of the Superintendent of Insurance:

The authority of the Superintendent of Insurance to promulgate such a regulation rests not only upon his general power to interpret the provisions of the Insurance Law (Insurance Law § 301(c)) but also upon his specific power to define the contents of a mandatory policy (Vehicle and Traffic Law § 311[4][a]). Such administrative regulations have the force and effect of law and are to be enforced by the courts unless arbitrary (*Molina v. Games Mgt. Servs.*, 58 N.Y.2d 523, 529, 462 N.Y.S.2d 615, 449 N.E.2d 395 [(1983)]).

*Id.* 506 N.Y.S.2d at 976.

The clarity of this passage regarding the authority of the Superintendent of Insurance causes us to adopt the reasoning of the *Allcity* court. Moreover, we believe the principles at work in *Allstate* are inconsistent with the law set forth by this court in *Hahn*, supra. Parenthetically, we note that the *Allstate* and *Allcity* courts were presented with identical factual and legal questions and yet the end results are antithetical.

In *Hahn*, we began our analysis with a review of *Country–Wide Insurance Co. v. Rodriguez,*, 55 N.Y.2d 162, 448 N.Y.S.2d 135, 433 N.E.2d 118, *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2930, 73 L.Ed.2d 1330. Louis Padilla, a New York resident insured under a policy issued in New York, was operating his vehicle in North Carolina when he was involved in an accident in which his passenger, Rodriguez, was injured. The liability limit of Padilla's policy was $10,000.00 for injuries to any individual. Rodriguez brought suit against Padilla and eventually recovered a judgment far in excess of the liability limit imposed by New York. On appeal, Country–Wide Insurance sought a declaration that the limit of its obligation was to pay $10,000.00 towards the satisfaction of the judgment and not $15,-000.00, the minimum insurance limit generally provided for injury to one person under North Carolina's compulsory statutory scheme. On review, the Court of Appeals held

the insurer was obligated under the insured's out-of-state endorsement provision of his policy and Section 672(5) of New York's insurance laws, to pay $15,000.00 towards the satisfaction of the judgment under North Carolina's compulsory scheme and not $10,000.00 under the New York no-fault Act since the benefits in North Carolina were higher.

We concluded our analysis in *Hahn* by adopting the rationale of *Wierbinski v. State Farm Auto. Ins. Co.*, 477 F.Supp. 659 (W.D.Pa.1979) as precedent for the Commonwealth. In *Wierbinski*, a New York domiciliary owned an automobile insured under a policy of no-fault insurance issued in New York. The New York domiciliary was subsequently injured in a one-car accident in Pennsylvania. After examining the New York No-fault Act, the *Wierbinski* Court concluded that the only logical interpretation of Section 672(5) was that it raises the limits of liability and the kinds of coverage afforded by a New York owner's policy to a level consistent with any higher requirements of a no-fault state in which an accident occurs. The result in this case was an award of unlimited medical benefits provided by the Pennsylvania No-fault Act.

In the instant case, we are not faced with a question of extending liability coverage. The facts of this appeal bring Appellant's claim under the "kinds of coverage" rubric which, Appellee argues, should be analyzed with an eye toward the same narrow interpretations reached by the *Allstate* court. We reject Appellee's argument and choose, instead, to adopt the position of the *Allcity* court.

In *Allcity, supra,* the insured sought to recover under an uninsured motorist endorsement of a New York automobile policy for a hit-and-run accident which occurred in New Jersey. Simply stated, the New Jersey uninsured motorist endorsement clause did not include a physical contact requirement for hit-and-run accidents while the alternative was true for the same provision in New York. Quoting from the *Allcity* Opinion:

> [T]he real question is whether New Jersey insurance requirements must be read into the Williams (insured) policy. New York's Insurance Law § 5103(e) directs that

every required policy of automobile liability insurance provide benefits at least in the minimum amount prescribed by the law of any state in which the vehicle is operated. Supplementing the statutory language is a regulation of the Superintendent of Insurance which mandates that every such policy shall provide "at least the minimum amount *and kind* of coverage which is required" for such vehicle in any other state and that any policy which does not include a provision to this effect shall be deemed to so provide (11 NYCRR 60.1[e]; emphasis supplied). The issue is whether these directive import into Williams' New York insurance policy the uninsured motorist coverage required of vehicles registered in New Jersey, thereby permitting him to recover under his policy regardless of physical contact.

*Id.* 506 N.Y.S.2d at 975–76.

As a result, the *Allcity* court held that the New York insurance policy was required to comply with New Jersey law thus eliminating the need for a showing of physical contact before a recovery for a hit-and-run accident may be allowed.

Clearly, the *Allstate* court would have rejected the *Allcity* rationale by characterizing its holding as providing "substantive additional coverage" since it secures redress for an otherwise unavailable claim under New York law. Yet, the *Allcity* court was not constrained to follow *Allstate's* narrow view of the "kinds of coverage" provision.

In this light, we reject the application of *Allstate* which is neither the most recent statement of the law on this issue, nor is it consistent with the law set forth in *Hahn,* supra. Instead, we adopt the rationale of the *Allcity* court and reverse the judgment of the trial court.

■ Similarly, we find that Appellant has not been precluded from receiving attorney's fees under Section 1009.-107(1) of the Pennsylvania No-fault Act which provides:

[I]f any overdue No-fault benefits are paid by the obligor after receipt by the obligor of notice of representation of a claimant in connection with a claim or action for the

payment of No-fault benefits, a reasonable attorneys' fee (based on actual time extended) shall be paid by the obligor to such attorney.

Section 1009.106(a)(2) defines benefits which are overdue as those not paid "within 30 days after the receipt by the obligor of each submission of reasonable proof." This Section further provides that "an obligor who rejects a claim for basic loss benefits shall give to the claimant written notice of the rejection promptly, but in no event more than thirty days after the receipt of reasonable proof of the loss." *See* 40 P.S. § 1009.106(a)(5).

In the instant case, Appellant's application for No-fault benefits, documentation proving loss, and a calculation of work-loss benefits, were sent to Appellee on February 25, 1982. Nearly four months elapsed before Appellee informed Appellant of its decision to deny payment for work-loss benefits. The language of the relevant Sections of the no-fault Act would lead us to conclude that attorney's fees in this matter are appropriate.

Judgment reversed. Case remanded for further proceedings. Jurisdiction relinquished.

OLSZEWSKI, Judge, dissenting:

I respectfully dissent from the majority's decision to adhere to a broad interpretation of the "kinds of coverage" provision found in appellant's policy. While the majority adopts the rationale of the New York Supreme Court's decision in *Allcity Ins. Co. v. Williams*, 120 A.D.2d 1, 506 N.Y.S.2d 974 (2d Department 1986), I find the New York Supreme Court's decision in *Allstate Ins. Co. v. Walsh*, 115 Misc.2d 907, 454 N.Y.S.2d 774 (1982), *aff'd* 99 A.D.2d 987, 472 N.Y.S.2d 867 (1st Department 1984), to be more persuasive. In both cases, the New York Supreme Court addressed the identical issue which is now before our Court, but the First Department and Second Department of that same New York Court reached opposite conclusions on this issue.

In *Allstate*, respondents, New York residents, were passengers in an insured vehicle which was forced off a road in

New Jersey by another vehicle. While there was no physical contact between the vehicles, the insured vehicle was forced down an embankment causing injuries to the respondents. The insurance policy in question was issued in New York by Allstate. Claims were made to Allstate pursuant to the New York No-fault Act under the provisions for hit and run accidents. Allstate, however, denied coverage because New York's No-fault Act required physical contact between the vehicles to qualify as a hit and run accident. Respondents brought suit, arguing that because New Jersey's No-fault Act allowed coverage for hit and run accidents without physical contact, Allstate was obligated to provide coverage pursuant to section 672(5) of New York's No-fault Act. The New York court, however, found in favor of Allstate.

In interpreting section 672(5), the New York court drew a distinction between cases brought under section 672(5) where the issue was whether the sister state's minimum dollar amount of coverage should be provided and cases brought under section 672(5) where the issue was whether the sister state's coverage should be provided when the issuing state would provide no coverage. The New York court explained:

> This court is of the opinion that both subdivision 5 of section 672 of the Insurance Law and section 60.1(e) of the Insurance Department Regulations do not create substantive additional coverage for accidents which occur in a sister State.... The minimum amount of coverage does not denote what is covered but rather the extent of liability in terms of the dollar limitation.... In this instance, respondents seek to expand upon this concept by asserting that any "kind" of coverage afforded in a sister State should be ipso facto the controlling coverage if the accident occurred in that State and the coverage in that State is more comprehensive. This is not what was intended by the Legislature when it enacted subdivision 5 of section 672. Rather, the Legislature has endeavored to afford the same minimum amount of liability as would

be imposed in a sister State if that State's minimum is greater than New York's.

115 Misc.2d at 913, 454 N.Y.S.2d at 778–79.

Similarly, in the instant case, appellant is seeking "substantive additional coverage" by seeking benefits under Pennsylvania's No-fault Act which would not be recoverable in any amount under New York's No-fault Act. I agree with the New York court that section 672(5) does not allow coverage based on a sister state's no-fault act where the New York No-fault Act specifically precludes that type of coverage. I, consequently, would find that "it is more equitable to provide each person with the coverage he/she expected and paid premiums for in his/her state of domicile than to impose Pennsylvania law upon him/her merely for being injured while traveling through the state." *Wierbinski v. State Farm Mutual Automobile Ins. Co.*, 477 F.Supp. 659 (W.D.Pa.1979). Accordingly, I would find that the trial court correctly concluded that Pennsylvania law was not applicable pursuant to section 672(5) of New York's No-fault Act. In addition, since I would find that appellant is not entitled to work-loss benefits under Pennsylvania's No-fault Act, appellant would thus be precluded from attorney's fees under section 1009.107 of the Pennsylvania Act. *See* 40 P.S. § 1009.107(1).

I, therefore, would affirm the order of the trial court.